THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LORI SHAVLIK, *et al.*,

Plaintiffs,

v.

CITY OF SNOHOMISH, *et al.*,

Defendants.

CASE NO. C17-0144-JCC

ORDER

This matter comes before the Court on Defendant Snohomish County Fire Protection District No. 4's ("Fire District") motion for summary judgment (Dkt. No. 29), Defendant City of Snohomish's ("City") motion for summary judgment (Dkt. No. 34), and Plaintiffs' cross-motion for partial summary judgment solely against the Fire District (Dkt. No. 33.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendants' motions (Dkt. Nos. 29, 34) and DENIES Plaintiffs' motion (Dkt. No. 33) for the reasons explained herein.

I. **BACKGROUND**

An employee of the Tan Line, a tanning business owned by Plaintiffs Lori and Kenneth Shavlik, called the Fire District to extinguish a fire at the business on February 4, 2010. (Dkt. No. 1-2 at 3.) The fire started in a wall abutting a utility room. (*Id.*) The utility room contained a dryer used to dry towels for the business. (*Id.*) Upon extinguishing the fire, Fire District

personnel discovered a sponge they believed smelled of mineral spirits and a can of solvent near the potential source of the fire, the dryer vent pipe, which they deemed suspicious. (*Id*. at 3–4.) Fire District personnel photographed the area and notified the City's police department, who took additional photographs upon their arrival. (*Id*.)

Following a lengthy investigation, the City's police detectives concluded they had probable cause to arrest Plaintiff Lori Shavlik for arson. (*Id*. at 4.) They theorized that she intentionally caused the fire with a handheld flame, intending to use the solvent, sponge, and accumulated dryer lint as accelerants, which she stuffed into the wall behind the dryer. (*Id*.) City detectives completed a Snohomish County Superform to support their probable cause determination. (Dkt. No. 35 at 86–95.) The Superform alleged Mrs. Shavlik intentionally set the February 4, 2010 fire, and attempted to set two other fires at the business in the preceding days, in an effort to "destroy the business, collect monies as a result of an 'accidental' fire and realize financial gain or relief from heavy debt." (*Id*. at 94.) The Superform referenced an "insurance policy for the store at the time of the fire [that] would have paid up to $1,000,000 for losses for a total loss or injury" and estimated Plaintiffs' debt to be $500,000, which included approximately $380,000 in outstanding lease obligations for Plaintiffs' businesses. (Dkt. No. 35 at 92.)

Officers arrested Mrs. Shavlik on January 5, 2011 and charged her with first degree arson and attempted first degree arson. (Dkt. Nos. 1-2 at 5, 34 at 3.) Mrs. Shavlik endured two criminal trials. The first ended in a hung jury on April 13, 2015 and the second ended in acquittal on March 3, 2016. (Dkt. No. 30-2 at 2–5.) The Fire District's Deputy Chief, Ron Simmons, one of the original responders to the fire, testified at both trials. (Dkt. No. 29 at 1, 9.) According to his determination report, prepared shortly after responding to the fire, he deemed the "fire to be intentional" with the "most probable cause being a handheld flame." (Dkt. No. 31-1 at 3.) He reached this conclusion through a process of elimination, after finding no other clear triggers. (*Id*.) This "negative corpus" method was recommended by the fire investigation guidelines in effect at the time, the 2008 version of the National Fire Protection Association's ("NFPA") 921

Guidelines. (Dkt. No. 29 at 19.) The 2008 NFPA 921 guidelines were in effect until January 3, 2011, when the 2011 version was published. (Dkt. No. 41 at 7.) The 2011 NFPA 921 guidelines, in effect from January 2, 2011 through September 11, 2014, disfavored the use of this "negative corpus" method, but did not rule out its use. (Dkt. No. 29 at 21–22.) The 2014 NFPA 921 guidelines, effective on September 11, 2012 similarly disfavored the use of the "negative corpus" method. (Dkt. No. 50 at 12.)

Plaintiffs vigorously dispute that Mrs. Shavlik intentionally set the fire. They allege City police and Fire District personnel predetermined she set the fire and then attempted to support their case through failing to preserve, destroying, and fabricating evidence, as well as through defamatory public statements. (Dkt. No. 1-2 at 3–5.) Accordingly, Plaintiffs bring suit against the City, the Fire District, and Snohomish County[1] ("County") for (1) defamation; (2) civil rights violations under 42 U.S.C. § 1983; (3) intentional or reckless infliction of emotional distress, i.e., outrage; and (4) malicious prosecution. (Dkt. No. 1-2 at 6–7.)

The City and Fire District move for dismissal of Mr. Shavlik's § 1983 claim due to a lack of standing and for summary judgment on all of Plaintiffs' remaining claims, asserting Plaintiffs fail to provide sufficient evidence to support a required element for each claim and that all claims but the malicious prosecution claim are untimely. (Dkt. Nos. 29 at 4–33, 34 at 6–18.) Plaintiffs cross-move for partial summary judgment, asking the Court to rule that Fire District personnel should have used the 2014 version of NFPA 921 in investigating the fire, as it was in effect before Mrs. Shavlik's criminal trials began. (Dkt. No. 49 at 4); (*see* Dkt. No. 41 at 7).

## II. DISCUSSION

### A. Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ.

---

[1] Plaintiffs' claims against the County are based upon the actions of City police and detectives, who moved to the County's employ on January 1, 2012. (Dkt. Nos. 1-2 at 2, 57 at 4.)

P. 56(a). In making this determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B.     Defamation

Plaintiffs bring a defamation claim, alleging "Defendants claimed Lori Shavlik was an arsonist" and "Defendants reported to the media that Mrs. Shavlik would receive up to $1,000,000 from the insurance policy from the subject fire." (Dkt. No. 1-2 at 6.) Plaintiffs further allege that as a result of these statements, they lost their business and were forced to file for bankruptcy protection. (Dkt. No. 45 at 7.) In order to survive summary judgment, Plaintiffs must put forward sufficient evidence to establish a prima facie case for the following elements: a false statement of fact, made without privilege, with the requisite level of fault, resulting in damages. *See Mohr v. Grant*, 108 P.3d 768, 773 (Wash. 2005); *LaMon v. Butler*, 770 P.2d 1027, 1029 (Wash. 1989).

Plaintiffs submit a number of statements made by Defendants' representatives. First, Plaintiffs submit Deputy Chief Simmons' February 2010 determination and incident reports, which label the incident as an "arson." (Dkt. No. 31-1 at 2, 7.) Second, Plaintiffs point to a July 29, 2010 e-mail from City Detective Fontenot to Plaintiffs' insurance company, seeking information on any insurance claims on the fire made to date by Plaintiffs. (Dkt. No. 20-9 at 1.) In the e-mail, Detective Fontenot indicates that he is "investigating an arson which occurred at

. . . Tan Line Inc." and "[d]uring the course of this investigation it is suspected that the owner, Lori D. Shavlik, may be responsible for the intentionally set fire inside the business on 2/4/2010." (*Id.*) Third, Plaintiffs reference the probable cause Superform prepared by City detectives in December 2010, indicating that "Lori D. Shavlik maliciously and with intent" set the fire at issue at her business. (Dkt. No. 35 at 93.) Fourth, Plaintiffs direct the Court to a January 7, 2011 newspaper article in the Snohomish Valley Reporter with attribution to Snohomish Police Department Commander A.J. Bryant.[2] (Dkt. No. 20-5 at 1–2.) The article theorizes that Mrs. Shavlik was responsible for the "arson" at the tanning salon and that its purpose was to collect on an insurance policy to compensate for the failing business. (*Id.*) Fifth, Plaintiffs submit a February 4, 2014 e-mail from Deputy Chief Simmons to County prosecutors, in which Simmons continues to maintain that mineral spirits were on the sponge discovered near the fire, even though the Washington State Crime Laboratory tested the sponge in 2010 and concluded it contained no such substance. (Dkt. Nos. 41 at 86, 45 at 23–24.) Sixth and finally, Plaintiffs direct the Court to Deputy Chief Simmons' testimony in Mrs. Shavlik's 2015 and 2016 criminal trials. (Dkt. No. 40 at 12.)

Even if these statements were false, they were also privileged. An absolute privilege applies to a witness in a judicial proceeding. *Twelker v. Shannon & Wilson, Inc.*, 564 P.2d 1131, 1133 (Wash. 1977). This privilege applies to Deputy Chief Simmons' testimony. The remaining statements are covered by a qualified privilege. Specifically, allegations two and four are covered by a qualified privilege that applies to a police officer's statements to the public and the press. *Bender v. City of Seattle*, 664 P.2d 492, 504 (Wash. 1983). Allegations one, three, and five are covered by a qualified privilege that applies between parties sharing a common interest, when the receiving party is reasonably entitled to know. *Pate v. Tyee Motor Inn, Inc.*, 467 P.2d

---

[2] Plaintiffs also describe an alleged e-mail exchange between the Snohomish Times and Commander Bryant. (*See* Dkt. Nos. 47 at 15–16.) But the Court is unable to locate this e-mail in the exhibits submitted by Plaintiffs and, therefore, will disregard this assertion.

301, 302 (Wash. 1970).

In order to defeat a qualified privilege, a plaintiff must establish by clear and convincing evidence that the statements represent an abuse of that privilege, i.e., Plaintiffs must put forward proof of "knowledge or reckless disregard as to the falsity of a statement." *Id*. at 505. Plaintiffs fail to meet this burden. In fact, Plaintiffs put forth no evidence that Defendants had the requisite knowledge that their statements were false, or that the speakers recklessly disregarded the truth. (*See generally* Dkt. Nos. 40 at 11–13, 47 at 13–17.)

In the alternative, Plaintiffs posit that imputation of a crime, as was the case here, is a *per se* defamatory act. (Dkt. Nos. 40 at 12, 47 at 13.) Plaintiffs cite no authority for this proposition, and the Court is aware of none. Further, the Court finds this proposition untenable, as it would allow anyone acquitted of a crime the opportunity to pursue a defamation claim, regardless of the circumstances.

Plaintiffs fail to present the Court with sufficient evidence to establish a prima facie case that Defendants' statements were made without privilege. On this basis, the Court concludes Plaintiffs have failed to carry their burden on summary judgment. The Court need not consider whether Plaintiffs present sufficient evidence to establish the other elements of the claim or its timeliness. Accordingly, the Court GRANTS summary judgment to the City and the Fire District on Plaintiffs' defamation claim.

### C. Violations of Plaintiffs' Constitutional Rights

Plaintiffs bring a cause of action pursuant to 42 U.S.C. § 1983, alleging that Defendants, through their employee's acts, violated their constitutional rights both by failing to preserve evidence and by fabricating evidence. (Dkt. No. 1-2 at 3–6.) Specifically, Plaintiffs allege: Detective Fontenot lost 28 exculpatory photos that Fire District personnel took shortly after they extinguished the fire; City police destroyed an exculpatory statement taken from Plaintiff's employee shortly after police arrived on scene; Detective Fontenot fabricated evidence by erroneously concluding that Plaintiffs' debt and the store's insurance coverage served as the

motive for the arson; Deputy Chief Simmons fabricated evidence when he informed City police and the County prosecutor that a sponge found near the fire was soaked in solvent when he "knew" the Washington State Crime Laboratory had previously analyzed the sponge and found no such solvent; and Deputy Chief Simmons fabricated evidence when he used the 2008 version of the NFPA 921 guidelines to investigate the fire, which allowed him to theorize that a handheld flame ignited the fire, when no direct evidence was discovered consistent with that theory. (Dkt. Nos. 40 at 5–7; 47 at 4–7.)

In order to support a constitutional claim based on the failure to preserve evidence, Plaintiffs must demonstrate that the failure was done in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547 (2004) (discussing the standard articulated in *Arizona v. Youngblood*, 488 U.S. 51(1988)). In order to support a constitutional claim based on the fabrication of evidence, Plaintiffs must demonstrate that the fabrication was deliberate, i.e., Defendants' employees knew the information was false. *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). Plaintiffs fail to present evidence of either bad faith or deliberate fabrication. Plaintiffs' allegations, even if true, describe no more than negligent acts. *See Montgomery v. Greer*, 956 F.2d 677, 679 (7th Cir. 1992) ("slip-shod" and "unprofessional" conduct does not demonstrate bad-faith). While Plaintiffs do provide evidence that the Washington State Patrol Crime Laboratory had previously determined that the sponge did not contain ignitable fluid (Dkt. No. 48 at 9), they provide no evidence that Deputy Chief Simmons was *actually aware* of this determination. (*See generally* Dkt. No. 40 at 6).[3]

As to the use of the 2008 NFPA 921 guidelines, these were the guidelines in effect at the time of Deputy Chief Simmons' investigation. (*See* Dkt. No. 54 at 7.) While they were later revised, that revision occurred well after Deputy Chief Simmons concluded his investigation and still allowed for the use of the "negative corpus" method. (*See* Dkt. No. 40 at 10.) Furthermore, it

---

[3] In fact, Deputy Chief Simmons indicates that he only learned of the determination "just before the first trial." (Dkt. No. 55-1 at 8.)

strains reason to conclude that by failing to revisit his investigation during the pendency of Mrs. Shavlik's criminal proceedings, Deputy Chief Simmons *fabricated* evidence. Plaintiffs put forth insufficient evidence to support their asserted constitutional violations.[4]

Even if Plaintiffs had brought sufficient evidence to support alleged constitutional violations, they do not bring sufficient evidence to demonstrate that, based on Defendants' customs, policies, or practices, Defendants are subject to *Monell* liability. *See Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978). Accordingly, Plaintiffs have failed to present sufficient evidence on the required elements of a § 1983 claim. As a result, the Court need not consider if their claim is timely. The Court GRANTS summary judgment to the City and the Fire District on Plaintiffs' § 1983 claim and DENIES Plaintiffs' cross-motion for summary judgment.

### D. Outrage

Plaintiffs bring a claim for intentional infliction of emotional distress, or outrage, alleging that Defendants' actions have caused Mrs. Shavlik "severe mental and emotional distress." (Dkt. No. 1-2 at 7.) However, severe mental and emotional distress is but one element in an outrage claim. A plaintiff must also demonstrate that a defendant engaged in extreme and outrageous conduct and intentionally or recklessly inflicted emotional distress (mere negligence is insufficient). *Reid v. Pierce County*, 961 P.2d 333, 337 (Wash. 1998). While "the question of whether certain conduct is sufficiently outrageous is ordinarily for the jury," the Court must determine, as a matter of law, if "reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 782 P.2d 1002, 1013 (Wash. 1989). Conduct is "extreme and outrageous" when it goes "beyond all possible bounds of decency, and

---

[4] In addition, Mr. Shavlik cannot raise a § 1983 claim that is derivative of Mrs. Shavlik's injuries. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[E]ven when the plaintiff has alleged injury . . . the plaintiff generally must assert his *own* legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (emphasis added)). Therefore, only Mrs. Shavlik has standing to raise these claims.

[is] regarded as atrocious, and utterly intolerable in a civilized community." *Reid*, 961 P.2d at 337.

Plaintiffs assert that it was (1) outrageous for the Fire District to allow its Deputy Chief to investigate the cause of the fire when he lacked certifications as a fire investigator; (2) that it was outrageous for the Fire District to allow him to later express opinions about the cause of the fire using the 2008 NFPA 921 guidelines rather than the 2014 NFPA 921 guidelines that were in effect when he later repeated his findings to County prosecutors; and (3) that it was outrageous for Detective Fontenot to "manufacture a fake motive" by concluding Mrs. Shavlik set the fire for financial gain when there was no possibility that the store's liability insurance policy would cover property lost in a fire. (Dkt. Nos. 40 at 24, 47 at 18.)

Plaintiffs point to no cases where a court found such allegations, as a matter of law, to be sufficient to support an outrage claim. (*See generally* Dkt. Nos. 40 at 24–26, 47 at 18.) Nor does this Court find reasonable minds could conclude that any of this behavior "goes beyond all bounds of decency." *Reid*, 961 P.2d at 337. By way of example, courts have found the following conduct not to be outrageous as a matter of law: the State's improper handling of evidence in a criminal investigation where a man was accused of killing his wife, and a store's pursuit of criminal shoplifting charges against a person after the person produced evidence demonstrating that she was innocent. *See Stansfield v. Douglas County*, 27 P.3d 205, 214 (Wash. App. 2001); *Banks v. Nordstrom, Inc.*, 787 P.2d 953, 960 (Wash. App. 1990).

This Court finds that Defendants' alleged conduct is not "extreme and outrageous" as a matter of law. *Reid*, 961 P.2d at 337. Therefore, it need not consider whether Plaintiffs claim is timely. The Court GRANTS summary judgment to the City and the Fire District on Plaintiffs' outrage claim.

### E. Malicious Prosecution

Finally, Plaintiffs bring a claim for malicious prosecution. (Dkt. No. 1-2 at 7.) To survive summary judgment, Plaintiffs must put forth evidence to show Defendants lacked probable cause

and the proceeding was instituted or continued through malice. *Hanson v. City of Snohomish*, 852 P.2d 295, 298 (Wash. 1993). An acquittal is sufficient to establish a lack of probable cause. *See Fuller v. Lee*, C13-0563-JLR, slip op. at 8 (W.D. Wash. Dec. 9, 2014) (discussing the history of the law in this area). But malice still is required. In order to establish malice, Plaintiffs must provide evidence that Defendants engaged in affirmative acts demonstrating "improper or wrongful motives or [a] reckless disregard" of Mrs. Shavlik's rights. *Turngren v. King County*, 705 P.2d 258, 266 (Wash. 1985).

Plaintiffs support their allegations of malice through the following evidence: an e-mail exchange between Deputy Chief Simmons and County prosecutors, where Deputy Chief Simmons describes Mrs. Shavlik's request for a continuance in her second criminal trial as "laughable;" allegations of evidence tampering; and expert testimony by Certified Fire and Explosion Investigator John Scrivener. (Dkt. No. 41 at 78); (*see generally* Dkt. Nos. 41, 42, 44). This evidence is insufficient to establish a genuine issue of material fact as to whether Defendants acted with malice.

The Court does not view Deputy Chief Simmons' e-mail as reflecting improper or wrongful motives, but as a statement of frustration over the length of time the criminal proceeding, and his need to testify, is taking. (*See* Dkt. No. 41 at 78.) Mrs. Shavlik's evidence tampering allegations are self-serving, uncorroborated assertions that need not be considered. (*See* Dkt. No. 42 at 2–10); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Finally, Mr. Scrivener's allegations cannot reasonably be interpreted as anything other than evidence of incompetence and/or negligence—not malice. (*See* Dkt. Nos. 41 at 2–16, 44 at 2–16.) Therefore, the Court GRANTS summary judgment to the City and the Fire District on Plaintiffs' malicious prosecution claim.

## III. CONCLUSION

Plaintiffs fail to present sufficient evidence to establish disputed material facts for all of the elements associated with their defamation, § 1983, outrage, and malicious prosecution

claims. Accordingly, the Court GRANTS the City's and Fire District's summary judgment motions (Dkt. Nos. 29, 34) on all claims. All of Plaintiffs' claims, including those against the County,[5] are DISMISSED with prejudice. The City's and Fire District's motions to strike (Dkt. Nos. 39 at 2, 57 at 1, 77 at 2, 79 at 1) are DISMISSED as moot. None of the information at issue impacted the Court's holding. Finally, Plaintiffs' cross-motion for summary judgment (Dkt. No. 33) is DENIED.

DATED this 27th day of February 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiffs fail to present sufficient evidence to support a prima facie case on any of their claims against the County based on the alleged misdeeds of City police and detectives, who moved to the County's employ on January 1, 2012. (Dkt. No. 57 at 4.) The Court may dismiss claims against a defendant based upon facts presented by another defendant. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008). The Court elects to do so here.